UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. 1:19-CR-0231-JRS-DLP |
| TONY FRANKLIN, | ) | |
| | ) | -04 |
| Defendant. | ) | |

## PETITION TO ENTER PLEA OF GUILTY AND PLEA AGREEMENT

The United States of America, by counsel, John E. Childress, Acting United States Attorney for the Southern District of Indiana, and, Tiffany J. Preston, Assistant United States Attorney ("the Government"), and the defendant, TONY FRANKLIN ("the defendant"), in person and by counsel, Kathryn DiNardo, hereby inform the Court that a Plea Agreement has been reached in this case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).  The following are its terms and conditions:

### Part 1:  Guilty Plea and Charge(s)

**1.      Plea of Guilty:** The defendant petitions the Court for leave to enter and agrees to enter a plea of guilty to the following offenses charged in the Superseding Indictment:

**a.**      Count 1 which charges that the defendant committed the offense of Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349.

**2.      Dismissal of Counts:**  Following imposition of sentence, the government will move to dismiss Counts 2 through 6, and 17 of the Superseding Indictment, without prejudice.  If

the defendant complies with all the terms of this Plea Agreement, then the Government will not seek to refile these charges.

      **3.**    **Potential Maximum Penalties**:  The offense is punishable by a maximum sentence of 20 years' imprisonment, a $250,000 fine, and 3 years' supervised release following any term of imprisonment.

      **4.**    **Elements of the Offense:**  To sustain the offense(s) to which the defendant is pleading guilty, the Government must prove the following elements beyond a reasonable doubt:

      As to Count One, that the defendant knowingly conspired to devise and participate in a scheme or artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts as described in Count One of the Superseding Indictment;

      Second, that the defendant did so knowingly and with intent to defraud; and

      Third, that the defendant caused interstate wire communications to take place in furtherance of her scheme to defraud as described in Count One of the Superseding Indictment.

### Part 2:  General Provisions

      **5.**    **Sentencing Court's Discretion Within Statutory Range:**  The defendant agrees and understands that: (A) the Court will use its discretion to fashion a sentence within the statutory range(s) set forth above; (B) the Court will consider the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence within the statutory range(s); (C) the Court will also consult and take into account the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") in determining the appropriate sentence within the statutory range(s); (D) the Sentencing Guidelines are not mandatory or binding on the Court, but are advisory in nature; (E) restitution may be imposed; (F) by pleading "Guilty" to more than one offense (Count), the Court

may order the sentences to be served consecutively one after another; (G) the final determination concerning the applicable advisory guideline calculation, criminal history category, and advisory sentencing guideline range will be made by the Court; and (H) by pleading "Guilty," the Court may impose the same punishment as if the defendant had plead "Not Guilty," had stood trial and been convicted by a jury.

6.   **Sentencing Court Not Bound by Guidelines or Recommendations:**   The defendant acknowledges that this Plea Agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(B) and that the determination of the defendant's sentence is within the discretion of the Court.  The defendant understands that if the Court decides to impose a sentence higher or lower than any recommendation of either party, or determines a different advisory sentencing guideline range applies in this case, or decides to impose a sentence outside of the advisory sentencing guideline range for any reason, then the defendant will not be permitted to withdraw this plea of guilty for that reason and will be bound by this plea of guilty.

7.   **Plea Agreement Based on Information Presently Known:**   The defendant recognizes and understands that this Plea Agreement is based upon the information presently known to the Government.  The Government agrees not to bring other federal charges against the defendant based on information currently known to the United States Attorney for the Southern District of Indiana.

The Government will inform the Court and the defendant at the time of taking the defendant's plea whether the Government has obtained any information after the Plea Agreement was signed that may warrant  bringing other federal charges against the defendant.

8.   **No Protection From Prosecution for Unknown or Subsequent Offenses:**  The defendant acknowledges and agrees that nothing in this agreement shall protect the defendant in

any way from prosecution for any offense not specifically covered by this agreement, or not known to the United States Attorney for the Southern District of Indiana at this time. The defendant further acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement.

9. **Rights Under Rule 11(b), Fed. R. Crim. P.:** The defendant understands that the Government has the right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath during the guilty plea colloquy. The defendant also understands that the defendant has the right: (A) to plead not guilty, or having already so pleaded, the right to persist in that plea; (B) to a jury trial; (C) to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceedings, including appeal; and (D) to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses. The defendant also understands that the Constitution guarantees the right to be considered for release until trial[1]; and if found guilty of the charge(s), the right to appeal the conviction on such charge(s) to a higher court. The defendant understands that if the Court accepts this plea of guilty, the defendant waives all of these rights.

### Part 3: Sentence of Imprisonment

10. **Sentencing Recommendation Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):** The parties have **not** agreed upon a specific sentence. The parties reserve the right to present evidence and arguments concerning what they believe to be the appropriate sentence in this matter.

---

[1]Title 18, U.S.C. §§ 3141-3156, Release and Detention Pending Judicial Proceedings.

**a.** **Government's Recommendation:** The Government has agreed to recommend a sentence at the low end of the applicable Sentencing Guidelines Range as calculated by the Court during the sentencing hearing, provided that the defendant (i) continues to fully accept responsibility for the offense, (ii) does not commit a new criminal offense before the date of any sentencing, and (iii) does not otherwise violate the terms of any pre-trial release before the date of sentencing.

**b.** **Defendant's Recommendation:** The defendant understands that he is free to recommend any sentence including a sentence of no imprisonment.

**11.** **Placement:** The defendant reserves the right to request that this Court recommend to the Federal Bureau of Prisons that the defendant serve any sentence of imprisonment imposed in this case at an institution identified at the time of sentencing. The defendant acknowledges and understands that any recommendation by the Court is only a recommendation and does not bind the Federal Bureau of Prisons. The Government does not object to the defendant's requested recommendation.

**12.** **Supervised Release:** Both parties reserve the right to present evidence and arguments concerning whether the Court should impose a term of supervised release to follow any term of imprisonment in this case, the duration of any term of supervised release, and the terms and conditions of the release.

**13.** **Conditions of Supervised Release:** The parties understand and agree that the Court will determine which standard and special conditions of supervised release to apply in this case. The parties reserve the right to present evidence and arguments concerning these conditions.

## Part 4:  Monetary Provisions and Forfeiture

**14.    Mandatory Special Assessment:**   The defendant will pay a total of $100 assessment on the date of sentencing or as ordered by the Court to the Clerk, United States District Court, which amount represents the mandatory special assessment fee imposed pursuant to 18 U.S.C. § 3013.

**15.    Fine:** The United States will not recommend a fine be imposed.

**16.    Restitution:**  The defendant agrees to pay restitution for all losses caused by the defendant's conduct, regardless of whether counts of the indictment/ information dealing with such losses will be dismissed as part of this plea agreement.  Pursuant to Title 18, United States Code, Section 3663(a)(3), the United States agrees to seek restitution from the defendant in an amount not to exceed $286,806.99, which the United States calculated by apportioning fault to the defendant by percentage as follows:

- 1/4 of the MSD demos and concrete = $20,500

- 1/3 of FBD's Bowen work before July 2017 and 1/2 after = $138,997.87

- 1/3 of dumpster costs before dumpster letter in March 2016 and ½ after = $127,309.12

The parties have not reached an agreement as to restitution. The defendant reserves the right to make arguments and present evidence regarding restitution. The defendant understands and agrees that the final determination concerning the total amount of restitution owed and how restitution is apportioned will be made by the Court at sentencing.   The defendant further understands that if the Court decides to impose a restitution amount that is higher or lower than any recommendation of either party, or determines that a different apportion of fault is attributable to the defendant for any reason, then the defendant will not be permitted to withdraw this plea of guilty for that reason and will be bound by this plea of guilty.

The defendant agrees that, while the District Court sets the payment schedule, this schedule may be exceeded if and when the defendant's financial circumstances change.  In that event, and consistent with its statutory obligations, the Government may take any and all actions necessary to collect the maximum amount of restitution in the most expeditious manner available.  The Government agrees that the defendant's residence at 8212 W. Pleasant Road, Yorktown, Indiana is not subject to forfeiture for restitution or any other purpose.

17.     **Obligation to Pay Financial Component of Sentence**:  If the defendant is unable to pay any financial component of the defendant's sentence on the date of sentencing, then the defendant agrees that the payment of the financial component should be a condition of supervised release.  The defendant has a continuing obligation to pay the financial component of the sentence. The defendant further agrees that as of the date of filing this Plea Agreement the defendant will provide all requested financial information, including privacy waivers, consents, and releases requested by the Government to access records to verify the defendant's financial disclosures,  to the  Government for use in the collection of any fines, restitution, and money judgments imposed by the Court and authorizes the Government to obtain credit reports relating to the defendant for use in the collection of any fines and restitution, and money judgments imposed by the Court.  The defendant also authorizes the Government to inspect and copy all financial documents and information held by the United States Probation Office.  If the defendant is ever incarcerated in connection with this case, the defendant may participate in the Bureau of Prisons Inmate Financial Responsibility Program.

### Part 5:  Factual Basis for Guilty Plea

18.     The parties stipulate and agree that the following facts establish a factual basis for the defendant's plea of guilty to the offense set forth in Paragraph One, above, and that the

Government would be able to establish the following facts beyond a reasonable doubt in the event this cause was to proceed to trial.   The following information is only a summary of the Government's evidence. This Plea Agreement is not intended to foreclose the presentation of additional evidence and the Government and the defendant reserve the right to present additional evidence at the time of sentencing.  When the phrase the "defendant acknowledges" is used below, it is meant to convey that the defendant agrees that the Government could prove the particular evidence beyond a reasonable doubt at trial.

Defendant TONY FRANKLIN ("FRANKLIN") was the owner of Franklin Building and Design, LLC ("Franklin Building"), in Muncie, Indiana, and was a resident of the Southern District of Indiana. Franklin Building performed demolition and general construction work for the Muncie Sanitary District ("MSD"), and maintained a business bank account at JP Morgan Chase & Company.

The defendant acknowledges that defendant Debra Nicole Grigsby ("Grigsby") was the District Administrator of the MSD, and a resident of the Southern District of Indiana.  She was appointed to the position in 2014.  As the District Administrator for MSD, GRIGSBY was jointly responsible with others for approving the selection of contractors to perform work on MSD Infrastructure Projects.  She also signed quotes for, or amendments to, construction-related contracts on MSD's behalf.

The defendant acknowledges that the defendant Phil Nichols ("Nichols") served as the Chairman for a political party in Delaware County ("the political party") from approximately 1990 through approximately 1998.  Though Nichols had no official position or title within the political party after approximately 1998, Nichols maintained a private office at the political party's

headquarters, and continued to exert influence and control over multiple official acts performed by certain Muncie public officials.

The defendant acknowledges that Jess Neal ("Neal") was a Sergeant in the Muncie Police Department, and the owner of Red Carpet, Inc. and Express Properties, LLC.

The defendant acknowledges that Tracy Barton was MSD's Superintendent of Sewer Maintenance and Engineering.  He was appointed to the position in 2013.   As the MSD's Superintendent, Tracy Barton technically reported to GRIGSBY, and was responsible for selecting and managing certain MSD contractors.

The defendant acknowledges that Individual A was a supervisor at MSD, and GRIGSBY's spouse.  Individual B was a Board member for the Muncie Sanitary District Board ("MSDB").  He was appointed to the position in 2014.  Individual B was  responsible, in the same manner as any Board member, for approving the quotes from demolition contractors who had been selected and awarded MSD work by GRIGSBY and Tracy Barton.

**The Paying Contractors**

Franklin Building, owned by FRANKLIN, performed demolition and general construction work for MSD.  Rodney Barber ("Barber") was the owner of Barber Contracting, Inc., in Muncie, Indiana.

The defendant acknowledges that Barber Contracting, Inc. performed demolition and general construction work for MSD.  Person A was the owner of Company A, in Gaston, Indiana. Company A performed contracting work for MSD.  Person B was the owner of Company B, in Muncie, Indiana.  Company B performed contracting work for MSD.  Person C was the owner of Company C, in Muncie, Indiana.  Company C performed contracting work for MSD.

The defendant acknowledges that the City of Muncie ("Muncie") was a unit of local government, and a political subdivision of the State of Indiana.  Muncie was located in the Southern District of Indiana. The functions and services provided by Muncie were coordinated through various agencies and departments.  MSD was a special unit of government created under Indiana State Law by a Muncie ordinance adopted in 1968.  MSD was located in the Southern District of Indiana.  Muncie/MSD maintained a business bank account at First Merchant's Bank Corp. ("Muncie's City Account").

The defendant acknowledges that residents and businesses living and operating in Muncie paid MSD for its services such as recycling, sanitation, sewer maintenance, storm water management, and utilities.  Those payments were deposited into Muncie/MSD's business bank account.  Payments to contractors who performed work on public works projects were drawn from MSD/Muncie's bank account.

The defendant acknowledges that the MSDB was a three-member board whose responsibilities included approving or disapproving claims reports from MSD's employees seeking authorization to pay contractors hired to do work for MSD. GRIGSBY reported to the MSDB.

The defendant acknowledges that beginning in or about 2014, MSD began a series of public works projects to improve Muncie's Sewer, Sanitary, and Flood Control Systems (the "MSD Infrastructure Projects").  MSD was also responsible for maintaining the Muncie sewer and storm water, and levee systems, and in some cases awarded contracts to private companies to repair, maintain, or mow those systems.

The defendant acknowledges that MSD employees, such as GRIGSBY, were required to solicit quotes from contractors who wished to perform work for MSD.  GRIGBSY had been

instructed to select contractors based upon various criteria, primarily focused on the lowest priced local contractor who was qualified to perform the work required.  After MSD awarded work to a contractor, the contractor's invoice would be processed by MSD staff, and then submitted to the Office of the City Controller to the City of Muncie, who in turn presented a "claims report" to the MSDB seeking authorization to pay the contractor for the work.  After the MSDB approved the claims report, MSD employees were authorized to pay contractors via checks drawn from Muncie's City Account.

FRANKLIN acknowledges that checks drawn from Muncie's City Account and deposited into the business bank accounts of Franklin Building, and Companies A, B, and C were processed through the Federal Reserve Bank Check Processing Centers located in Cincinnati, Ohio, or Chicago, Illinois, and traveled in interstate commerce.  FRANKLIN further acknowledges that checks deposited into First Merchant's Bank in Muncie, Indiana, were uploaded through a facility of interstate commerce to a server located in Florida.  First Merchant's bank was insured by the Federal Deposit Insurance Corporation.  The internet is a facility of interstate commerce, and Rodney Barber used an E-mail account to submit fraudulent invoices from Barber Contracting, Inc. to MSD.

### The Scheme to Defraud MSD

Beginning in or about 2015, FRANKLIN, Phil Nichols, Grigsby, Jess Neal, Tracy Barton, and others, devised, intended to devise, and participated in a scheme or artifice to defraud MSD, and to obtain money and property of MSD by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts made by MSD employees to the MSDB, in exchange for cash bribes and kickbacks, benefits, or property, to cause the clearing of checks drawn on the Muncie City Account, and deposited into the Paying Contractors' business

11

bank accounts ("the Scheme"), through the following means and methods:

The Scheme, known to some of the coconspirators as "the Program," was an illegal agreement by FRANKLIN, Nichols, Grigsby, Neal, Tracy Barton, and the Paying Contractors to defraud MSD by presenting materially false and fraudulent claims reports to the MSDB to cause the MSDB to approve the clearing of checks drawn on the Muncie City Account and deposited into the Paying Contractors' business bank accounts.

The claims reports presented to the MSDB were materially false and fraudulent because Grigsby and others concealed the coconspirators, Nichols', Grigsby's, and Tracy Barton's illegal agreement to solicit and accept bribes and kickbacks from the Paying Contractors, including FRANKLIN, and to falsify the Paying Contractors' quotes, bids, and invoices arising out of MSD public works projects during the conspiracy period.

The defendant acknowledges that as a result of the Scheme, the MSDB approved the clearing of checks drawn on Muncie's City Account to pay the invoices submitted to MSD by the Paying Contractors for work on MSD projects that they procured through fraud.

<u>Means and Methods of the Scheme to Defraud MSD</u>

It was part of the Scheme that Nichols, Grigsby, Neal, Tracy Barton, other Muncie employees, and the Paying Contractors, including FRANKLIN, participated in a criminal conspiracy to steer MSD public works contracts to the Paying Contractors, in exchange for cash bribes and kickbacks, benefits, or property, to Nichols, Grigsby, Neal, Tracy Barton, and others.

The defendant acknowledges that Nichols, Grigsby, Neal, Tracy Barton, and others, accepted the cash bribes and kickbacks, benefits, or property, and used them for their own personal expenditures, or that Nichols surreptitiously gave a portion of the illegal cash payments to the political party or members of the political party.  Nichols used his influence and control within the

political party to direct the performance of official acts by Grigsby and Tracy Barton within MSD, namely, their decisions to award MSD public works projects to those Paying Contractors who paid or agreed to pay Nichols cash bribes and kickbacks.

Grigsby abused her position of public trust and conspired with Nichols, Neal, Franklin, Tracy Barton, and others to steer contracts for work arising out of MSD Infrastructure Projects to Franklin Building in exchange for Nichols and Grigsby receiving something of value from Franklin, through Neal, including bribes, kickbacks, benefits, money or property.  Indeed, Nichols accepted a cash bribe at Nichols' office in the political party's headquarters from Franklin, through Grigsby and Neal.

FRANKLIN acknowledges that during the conspiracy period, Neal approached Grigsby to ascertain how Franklin Building could be awarded MSD public works contracts.  FRANKLIN tendered fraudulent quotes to Grigsby so that Grigsby would award Franklin Building two demolition contracts arising out of the MSD Infrastructure Projects. FRANKLIN acknowledges that Grigsby provided Tracy Barton with the dollar amounts set forth on Franklin Building's fraudulent quotes, and then Tracy Barton then obtained higher quotes from Barber Contracting, Inc. and Company A.  FRANKLIN acknowledges that Barton intended to ensure that Franklin Building's quotes for the two demolitions would be the lowest.  After Tracy Barton obtained the fraudulent quotes from Barber Contracting, Inc. and Company A, MSD then awarded two demolition contracts arising out of MSD Infrastructure Projects to Franklin Building. FRANKLIN acknowledges that Tracy Barton knowingly obtained fraudulent quotes from Barber Contracting and Company A, so that Franklin Building's quotes for the two demolitions arising out of MSD Infrastructure Projects would be the lowest.

During the time period in which Franklin Building began to work on the Howard Street

projects, MSD stopped awarding demolition contracts to Franklin Building. FRANKLIN acknowledges that Neal approached Grigsby at Muncie City Hall, and asked Grigsby why Franklin Building had not been awarded additional demolition contracts arising out of MSD Infrastructure Projects. Grigsby then told Neal that Nichols had ordered Grigsby and Tracy Barton to discontinue awarding contracts to Franklin Building.

Later in the winter of 2015, Neal, in Franklin's presence, gave Grigsby an envelope that contained cash. Neal told Grigsby to give the envelope to Nichols, told Grigsby the cash was from Franklin, and instructed Grigsby to tell Nichols that it was from Franklin. Grigsby delivered the cash bribe from Franklin through Neal to Nichols at Nichols' office in the political party's headquarters. FRANKLIN admits that the cash bribe was intended to induce Nichols to allow Grigsby to award Franklin Building more MSD work.

FRANKLIN acknowledges that after he, through Neal and Grigsby, paid Nichols the cash bribe, Franklin Building was awarded more work from MSD. FRANKLIN then submitted fraudulent quotes to MSD for Franklin Building to demolish three additional homes arising out of the MSD Infrastructure Projects. FRANKLIN acknowledges that Tracy Barton obtained fraudulent quotes from Barber Contracting, Inc., and Companies A and C, so that Franklin Building's quotes for the two demolitions arising out of the MSD Infrastructure Projects would be the lowest.

In exchange for awarding the seven demolition contracts to Franklin Building arising out of the MSD Infrastructure Projects, Franklin and Neal tendered something of value to Grigsby, including money, benefits, or other property. Grigsby used the money, benefits, or property she received from Franklin, through Neal, for her own personal expenditures and for Individual A's personal expenditures.

As a result of the Scheme, FRANKLIN, Nichols, Grigsby, Neal, Tracy Barton, and others, caused MSD to award demolition contracts arising out of the MSD Infrastructure Projects to the following Paying Contractors in exchange for something of value, including cash kickbacks, benefits, money, or property:

| Contractor | Number of Bids | Number of Awards | Value of Awards |
|---|---|---|---|
| Franklin Building and Design, LLC | 7 | 7 | $134,600 |
| Barber Contracting, Inc. | 38 | 14 | $ 263,274 |
| Company A | 36 | 18 | $ 376,219 |
| Company B | 4 | 1 | $ 16,000 |
| Company C | 34 | - | - |
| **Total** | **119** | **40** | **$ 790,093** |

Franklin submitted invoices to MSD seeking payment for demolitions which included the cost of waste disposal and hauling arising out of the MSD Infrastructure Projects that Franklin knew Franklin Building did not incur.  MSD paid Franklin Building for the waste disposal and hauling costs arising out of MSD Infrastructure Projects, and Grigsby did not verify that Franklin Building actually incurred those costs.   In fact, MSD also paid Company D directly for Franklin Building's waste disposal and hauling costs arising out of MSD Infrastructure Projects, despite the fact that MSD had already reimbursed Franklin Building for the exact same purported costs.

Franklin Building, Barber Contracting, Inc., and Companies A and B submitted invoices to MSD for demolition work arising out of the MSD Infrastructure Projects.  Grigsby presented claims reports to the MSDB that the MSDB  authorized for payment to Franklin Building, Barber Contracting, Inc., and Companies A, B, and C for work arising out of MSD Infrastructure Projects, and for work arising out of the repair, maintenance, and mowing of the levee and storm and sewer systems.   Nichols, Grigsby, Neal and Tracy Barton, caused MSD to draw funds from Muncie's

City Account to be deposited into the business bank accounts of Franklin Building, Barber Contracting, Inc., and Companies A and B.

Nichols, Grigsby, Neal, Franklin, Tracy Barton, and others, falsified documents, or caused documents to be falsified, and concealed the Scheme to defraud from federal investigators and other law enforcement officers. Nichols, Grigsby, Neal, Franklin, Tracy Barton, and others did misrepresent, conceal, and hide, and caused to be misrepresented, concealed, and hidden, acts done in furtherance of the Scheme and the purpose of those acts.

As a result of said scheme to defraud, and as set forth in Count One of the Superseding Indictment, beginning in or about October 2015, in the Southern District of Indiana, Indianapolis Division, and elsewhere, TONY FRANKLIN, and others, did knowingly and intentionally conspire and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, by devising a scheme or artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, or promises, specifically by transmitting or causing to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, and signals, namely, a clearing of checks drawn on the Muncie City Account, and deposited into the business bank accounts of Franklin Building and Design, LLC, Barber Contracting, Inc., and Company's A, B, and C, and by using facilities of interstate commerce to submit fraudulent invoices.

Additionally, FRANKLIN acknowledges that during the course of the criminal investigation conducted by the Federal Bureau of Investigation and the Department of Justice, the following matter, among others, was material to that investigation:

a.      Whether FRANKLIN paid a kickback in any form to any person in exchange for work he performed for another entity including the City of Muncie.

16

On or about August 11, 2017, TONY FRANKLIN, in response to the questions set forth in (a) and (b) above posed by agents of the Federal Bureau of Investigation, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Executive branch of the United States.

## Part 6:  Other Conditions

**19.     Background Information:**  The defendant acknowledges and understands that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the defendant for the purpose of imposing an appropriate sentence.  The defendant acknowledges and understands that the Government is not prohibited from providing information concerning background, character, and conduct of the defendant for the purpose of recommending or advocating an appropriate guideline calculation and sentence.

**20.     Good Behavior Requirement:**  The defendant agrees to fully comply with all conditions of release imposed by the Court during all stages of this case.  If the defendant fails to fully comply with such conditions, then the Government may withdraw from this Agreement.

**21.     Compliance with Federal and State Laws:**  The defendant understands that the obligations of the Government in this Plea Agreement are expressly contingent upon the defendant abiding by federal and state laws.

## Part 7:  Sentencing Guideline Stipulations

**22.     Guideline Computations:** The parties reserve the right to present evidence and argument concerning the appropriate advisory Sentencing Guideline range for these offenses.  The parties have discussed this computation, but have not agreed upon the advisory calculation.  They agree that the Court will make this determination. Additionally, the parties agree that the information contained within the Stipulated Factual Basis does not prevent either party from

17

making arguments regarding the loss attributable to the defendant for Sentencing Guideline purposes.

      **a.**    **Acceptance of Responsibility:**  To date, the defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct.  Based upon the defendant's willingness to accept a Plea Agreement and enter a plea of guilty to the criminal conduct noted in this agreement, the Government agrees that the defendant should receive a two (2) level reduction *provided* the defendant  satisfies the criteria set forth in Guideline § 3E1.1(a) up to and including the time of sentencing.  The defendant timely notified the Government of defendant's intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently.  After the Defendant enters a plea of guilty, the Government intends to file a motion pursuant to U.S.S.G. § 3E1.1(b) requesting that the Court decrease the offense level by one (1) additional level.  The parties reserve the right to present evidence and arguments concerning the defendant's acceptance of responsibility at the time of sentencing.

## Part 9:  Waiver of Right to Appeal

      **23.**    **Direct Appeal:**  The defendant understands that the defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined.  Acknowledging this right, and in exchange for the concessions made by the Government in this Plea Agreement, the defendant expressly waives the defendant's right to appeal the conviction imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742.  The defendant further expressly waives any and all challenges to the statute(s) to which the defendant is pleading guilty on constitutional grounds, as well as any challenge that the defendant's admitted conduct does not fall within the scope of the applicable statute(s). The

defendant further agrees that in the event the Court sentences the defendant to sentence below or within the applicable Sentencing Guidelines as calculated by the Court at sentencing, and regardless of the defendant's criminal history category or how the sentence is calculated by the Court, then the defendant expressly waives the defendant's right to appeal the sentence imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. This blanket waiver of appeal specifically includes all provisions of the guilty plea and sentence imposed, including the length and conditions supervised release and the amount of any fine.

24.     **Later Legal Challenges:**   Additionally, the defendant expressly agrees not to contest, or seek to modify, the defendant's conviction or sentence or the manner in which either was determined in any later legal proceeding, including but not limited to, an action brought under 18 U.S.C. § 3582 or 28 U.S.C. § 2255.  As concerns this Section 3582 waiver, should the United States Sentencing Commission and/or Congress in the future amend the Sentencing Guidelines to lower the guideline range that pertains to the defendant's offense(s) and explicitly make such an amendment retroactive, the Government agrees that it will not argue that this waiver bars the defendant from filing a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2) based on that retroactive Guidelines amendment.  However, if the defendant files such a motion, the Government may oppose the motion on any other grounds.  Furthermore, should the defendant seek to appeal an adverse ruling of the district court on such a motion, the Government may claim that this waiver bars such an appeal.  As concerns the Section 2255 waiver, the waiver does not prevent claims, either on direct or collateral review, that the defendant received ineffective assistance of counsel.

25.     The Government further agrees that it will not assert this waiver as a bar to the defendant seeking a "compassionate release" sentence reduction pursuant to the First Step Act of

2018 and 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling reasons" established by the defendant and consistent with U.S.S.G. § 1B1.13 application note 1(A) & (C) (or, in the event of amendment of those U.S.S.G. provisions, the provisions, if any, with the same effect at the time of the filing of the motion for sentence reduction). However, the defendant waives any right to file more than one motion on the same basis. Furthermore, if the defendant files more than one motion, the Government reserves the right to assert this waiver as a bar to an appeal from the District Court's decision regarding that motion. The government further reserves the right to oppose any motion for compassionate release on any other grounds.

26. **No Appeal of Supervised Release Term and Conditions**: The parties' reservation of the rights to present evidence and arguments in this Court concerning the length and conditions of supervised release is not intended to be inconsistent with the Waiver of Appeal specified above, which includes a waiver of the right to appeal to the length and conditions of the period of supervised release.

### Part 10:  Presentence Investigation Report

27. The defendant requests and consents to the commencement of a presentence investigation by probation officers of the United States District Court for purposes of preparing a Presentence Investigation Report at this time and prior to the entry of a formal plea of guilty.

28. The defendant further requests and consents to the review of the defendant's Presentence Investigation Report by a Judge, defendant's counsel, the defendant, and the Government at any time, including prior to entry of a formal plea of guilty.

### Part 11:  Immigration Consequences

29. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under

federal law, a broad range of crimes are removable offenses, including the offenses to which the defendant is pleading guilty. The defendant also recognizes that removal will not occur until service of any sentence imposed in this case has been completed. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the conviction in this case on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is the defendant's removal from the United States.

### Part 12:  Statement of the Defendant

**30.**     By signing this document, the defendant acknowledges the following:

**a.**     I have received a copy of the Superseding Indictment and have read and discussed it with my attorney. I believe and feel that I understand every accusation made against me in this case. I wish the Court to omit and consider as waived by me all readings of the Superseding Indictment/Information in open Court, and all further proceedings including my arraignment.

**b.**     I have told my attorney the facts and surrounding circumstances as known to me concerning the matters mentioned in the Superseding Indictment, and believe and feel that my attorney is fully informed as to all such matters. My attorney has since informed, counseled and advised me as to the nature and cause of every accusation against me and as to any possible defenses I might have in this case.

**c.**     I have read the entire Plea Agreement and discussed it with my attorney.

**d.**     I understand all the terms of the Plea Agreement and those terms correctly reflect the results of plea negotiations.

21

**e.**      Except for the provisions of the Plea Agreement, no officer or agent of any branch of Government (federal, state or local), nor any other person, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence, or probation, or any other form of leniency, if I would plead "Guilty."  I respectfully request that the Court consider in mitigation of punishment at the time of sentencing the fact that by voluntarily pleading "Guilty" I have saved the Government and the Court the expense and inconvenience of a trial.  I understand that before it imposes sentence, the Court will address me personally and ask me if I wish to make a statement on my behalf and to present any information in mitigation of punishment.

**f.**      I am fully satisfied with my attorney's representation during all phases of this case. My attorney has done all that anyone could do to counsel and assist me and that I fully understand the proceedings in this case against me.

**g.**      I make no claim of innocence, and I am freely and voluntarily pleading guilty in this case.

**h.**      I am pleading guilty as set forth in this Plea Agreement because I am guilty of the crime(s) to which I am entering my plea.

**i.**      I understand that if convicted, a defendant who is not a United States Citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**j.**      My attorney has informed me, and I understand, that I have the right to appeal any conviction and sentence that I receive, unless I have waived my right to appeal as part of this Plea Agreement.  If I have not waived my right to appeal, I understand that I must file a Notice of Appeal within fourteen (14) days of the entry of the judgment in this case; I further understand

that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done.  I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

**k.**      My attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation office, then Section 3C1.1 of the Sentencing Guidelines allows the Court to impose a two-level increase in the offense level.

**l.**      If this cause is currently set for trial on the Court's calendar, I request that this date be continued to permit the Court to consider this proposed guilty Plea Agreement.  I further understand that any delay resulting from the Court's consideration of this proposed guilty Plea Agreement, up to and including the date on which the Court either accepts or rejects my guilty plea, will be excluded in computing the time within which trial of this cause must commence, pursuant to 18 U.S.C. § 3161(h)(1)(G).

### Part 13:  Certificate of Counsel

**31.**      By signing this document, the defendant's attorney and counselor certifies as follows:

**a.**      I have read and fully explained to the defendant all the accusations against the Defendant which are set forth in the Superseding Indictment in this case;

**b.**      To the best of my knowledge and belief each statement set forth in the foregoing petition to enter plea of guilty and Plea Agreement is in all respects accurate and true;

**c.**      The plea of "Guilty" as offered by the defendant in the foregoing petition to enter plea of guilty and Plea Agreement accords with my understanding of the facts as related to me by the defendant and is consistent with my advice to the defendant;

**d.**      In my opinion, the defendant's waiver of all reading of the Superseding Indictment in open Court, and in all further proceedings, including arraignment as provided in Rule 10, Fed. R. Crim. P., is voluntarily and understandingly made; and I recommend to the Court that the waiver be accepted by the Court;

**e.**      In my opinion, the plea of "Guilty" as offered by the defendant in the foregoing petition to enter plea of guilty and Plea Agreement is voluntarily and understandingly made and I recommend to the Court that the plea of "Guilty" be now accepted and entered on behalf of the defendant as requested in the foregoing petition to enter plea of guilty and Plea Agreement.

## Part 14:  Final Provision

32.    **Complete Agreement:**  The defendant acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce the defendant to plead guilty.  This document is the complete and only Plea Agreement between the defendant and the United States Attorney for the Southern District of Indiana and is binding only on the parties to the Plea Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified except in writing, signed by all parties and filed with the Court, or on the record in open court.

Respectfully submitted,

JOHN E. CHILDRESS
Acting United States Attorney

6/22/2021
DATE

Tiffany J. Preston
Assistant United States Attorney

6/22/2021
DATE

Nicholas J. Linder
Deputy Chief, Criminal Division

6/22/21
DATE

Tony Franklin
Defendant

6/22/21
DATE

Kathryn DiNardo
Counsel for Defendant

25